**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| LAURIE YATES,<br>      PLAINTIFF,<br><br>v.<br><br>ORACLE FINANCIAL GROUP, LLC,<br>HARTFORD CASUALTY INSURANCE COMPANY,<br>GREGORY CIPRESSI, individually,<br>DEBT MANAGEMENT PARTNERS, LLC, and<br>DANIEL J. VALENTINE, individually,<br>      DEFENDANTS | Case No. 6:19-cv-46 |

## PLAINTIFF'S COMPLAINT

1.  This action arises out of violations of the Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. § 1961, et seq., Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, and the Consumer Sales Practices Act, R.C. § 1345.01, et seq., and the Texas Finance Code § 392.001, et seq. by Defendants Oracle Financial Group, LLC's ("Oracle"), Gregory Cipressi ("Cipressi"), Debt Management Partners, LLC ("DMP") and Daniel J. Valentine ("Valentine").

2.  Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

3.  Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

4.  Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 (a) and 28 U.S.C. § 1391(b), in that one or more defendants transact business in this judicial district and a substantial portion of the acts giving rise to this action occurred in this District.

5.  Plaintiff resides in this District.

## PARTIES

6. Plaintiff, Laurie Yates ("Plaintiff"), is an adult individual residing in Coryell County, Texas, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1), and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

7. Oracle is a Delaware business operating from Buffalo, New York.

8. Oracle can be served at 1885 Harlem Rd., Suite 200, Buffalo, New York 14212.

9. Oracle's website (https://www.oraclegroupllc.com/About-Us.html) (last visited February 7, 2019) states the following:

> Oracle Group is offering a professional debt collection service that promises outstanding results. It is your money, but we will do our utmost best to collect it for you. What makes our collection agency different and better is the care that we take. We are diligent and thorough in our debt collections efforts and we believe if an account can be resolved; we will resolve it. Our percentage of collections is greater than many larger collection agencies and our contingency rates are better than industry standard rates. Our collections staff members are trained to understand fully the correct methods to communicate persuasively with debtors.

10. The principal purpose of Oracle is the collection of debts using the mails and telephone and other means.

11. Oracle regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

12. Oracle is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

13. Cipressi is a natural person, residing at 27 S Glidden Street, Cheektowaga, NY 14206.

14. Cipressi is the owner of Oracle.

15. Cipressi actively manages Oracle and directs its company policies.  Cipressi directly or indirectly instructed the employees of Oracle to act in the manner they acted when attempting collections from Plaintiff as described in the paragraphs below.

16. Cipressi regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Cipressi uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

17. Cipressi is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

18. Defendant DMP is a Delaware business entity operating from Amherst, NY.

19. DMP can be served via its registered agent in Delaware, United Corporate Services 874 Walker Rd, Suite C, Dover, Delaware 19904.

20. DMP's website (https://dmpcollections.com/about/) (last visited February 7, 2019) states:

> Debt Management Partners (DMP) and our operating team has been a niche leading liquidator of delinquencies since 2004. DMP has thrived in one of the most difficult spaces in collections; we look to bring our careful brand management to your group to ensure the highest results while maintaining a tailored customer experience.
> …
> -Our Chief Operating Officer is a 25 year veteran of the collection industry; he has overseen thousands of employees at OSI, managed direct placements from major banks, coordinated purchasing and liquidation for hedge funds, and has sat on the boards of numerous professional trade organizations. Overseeing all aspects of account management, he maintains consistency and quality control at every step of the process.
> …
> DMP aims to bring our success in account management to lenders in order to ease their internal account strategies and increase their yield.

21. Additionally, DMP's website (https://dmpcollections.com/account-holders/) (last visited

on February 7, 2019) states:

> Do you have a question about an account? Did you receive a notice in the mail
> or a phone call you would like more information regarding?
> Please note: To ensure compliance with state and federal laws pertaining to
> debt collection, we are unable to answer any questions or discuss any debt
> collection issues via email. This is an attempt to collect a debt. Any
> information obtained may be used for that purpose.
>
> If you have received a notice in the mail, please direct all inquiries to the toll-
> free number and/or address that is located on the notice you received. Please
> include your DMP account number, creditor's name, and creditor's account
> number.
>
> Only if you do not have a notice, you may send payment and correspondence
> to the following address and include the creditor's name, creditor's account
> number and, if available, DMP's account number. Use this address only if you
> do not have a notice as it may delay credit to your account.

22. The principal purpose of DMP is the purchase of delinquent debts and the collection of

those debts, directly or indirectly, using the mails and telephone and other means.

23. DMP regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another that arose out of transactions in which the money,

property or services which are the subject of the transactions are primarily for personal,

family or household purposes.

24. DMP is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin.

Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex.

Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

25. During all times pertinent hereto, DMP directly and indirectly participated in the

unlawful debt collection practices to collect an alleged debt from Plaintiff that are

described in this complaint via its ownership of the account Oracle was attempting to

collect on its behalf by influencing and/or ratifying the policies and procedures of Oracle and its agents directly or indirectly.

26. DMP has been very successful in its collection business, illegal as it may be, as the company owns or recently owned a 2006 Ferrari F430 Spider convertible, a 2010 Bentley Continental Super Sports Coupe, and multiple Mercedes Benz vehicles.

27. Hartford Casualty Insurance Company ("Hartford") is the surety company for the bond DMP has on file with the Texas Secretary of State, specifically bond number 20BSBGV8871.

28. Hartford is also the surety company for the bond Oracle has on file with the Texas Secretary of State, specifically bond number 14BSBHB2884.

29. Hartford is a foreign entity that can be served in the state of Texas via its registered agent, C T Corporation System, at 1999 Bryan Street Suite 900, Dallas, Texas 75201.

30. Hartford is liable for acts committed by DMP pursuant to, and to the extent provided by, Chapter 392 of the Texas Finance Code and a bond secured pursuant thereto (bond 20BSBGV8871), as well as any other applicable law.

31. Hartford is also liable for acts committed by Oracle pursuant to, and to the extent provided by, Chapter 392 of the Texas Finance Code and a bond secured pursuant thereto (bond 14BSBHB2884), as well as any other applicable law.

32. Defendant Daniel J. Valentine ("Valentine") is a natural person, residing at 6545 Belle Way, East Amherst, New York 14051-2817.

33. Valentine is a managing member of defendant DMP. Valentine actively manages DMP and directs the policies of that company.

34. Valentine regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Valentine uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

35. Valentine is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

### FACTUAL ALLEGATIONS

36. At some time in the past, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, namely an amount due and owing on a personal account (hereinafter the "Account").  Specifically, the account is alleged to be a debt owed or formerly owed to Money Key as a result of an alleged pay day loan.  If the Account is valid, the funds from the alleged loan were used for various personal effects, but not for any business or commercial purpose whatsoever.

37. The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and is a "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

38. The Account allegedly went into default with the original creditor.

39. After the Account allegedly went into default, the Account was placed with, or otherwise transferred to DMP and then to Oracle for collection.

40. Upon information and belief, DMP purchased the account in questions and used Oracle to make direct contact with Plaintiff to collect it.

41. Plaintiff admits the existence of the account, but disputes the amount Defendants attempted to collect from her.

42. Plaintiff requests that defendants cease all further communications regarding the Account.

43. Oracle's collector(s) were employee(s) of Oracle at all times mentioned herein.

44. Oracle acted at all times mentioned herein through its employee(s).

**RICO Enterprise**

45. During the entire course of the collection efforts against Plaintiff, Cipressi was the owner of Oracle and had active control or operation of the management of Oracle by instructing Oracle's employees in the course of their employment/agency with Oracle.  Cipressi taught all employees of Oracle the specific techniques to use in their collection attempts described in the paragraphs below, or otherwise knew about and ratified the techniques used by the employees of Oracle.

46. During the entire course of the collection efforts against Plaintiff, Valentine was the managing member of DMP and had active control or operation of the management of DMP by instructing DMP's employees in the course of their employment/agency with DMP.  Valentine taught all employees of DMP the specific techniques to use in their collection attempts described in the paragraphs below, or otherwise knew about and ratified the techniques used by the employees of DMP.

47. During the entire course of the collection efforts against Plaintiff, Cipressi and Valentine acted in association with each other and their companies, Oracle and DMP regarding the conduct toward Plaintiff described below by showing up to the Oracle and DMP offices to work and by using Oracle and DMP equipment and by assisting Oracle and DMP in obtaining revenue.

48. Oracle and DMP are legal entities, separate and distinct from all other defendants and separate and distinct from the association of all other defendants. Oracle and DMP was the avenue through which all other defendants conducted their operation. Oracle and DMP served as the receptacle of all monies fraudulently obtained, or attempted to be obtained by fraudulent means, as described below.

49. Oracle was governed by Cipressi and required one or more of Oracle's employees to act in the fraudulent manner described below in order to obtain revenue.

50. DMP was governed by Valentine and required one or more of DMP's employees to act in the fraudulent manner described below in order to obtain revenue.

51. DMP, Valentine and Cipressi conspired to use Oracle and Oracle's employees to act in the fraudulent manner described below in order to obtain revenue.

52. The interactions of any two or more of the defendants as described in paragraphs 45-51 above establish the existence of an "enterprise" as defined in 18 U.S.C. § 1961(4).

**Fraudulent Collection Practices**

53. During the one year prior to the filing of this complaint, in October 2018, Oracle called Plaintiff and told her that a process server was on the way to find her and asked Plaintiff if she had signed anything yet. When Plaintiff informed Oracle that she had not signed anything yet, she was told that she could repay the Account to stop the legal action that was being initiated.

54. In order to avoid the impending perils and embarrassment that was threatened, Plaintiff agreed to make payments on the Account.

55. Plaintiff made two payments of $275.54, one in October 2018 and one in November 2018.

56. Plaintiff agreed to make another payment in December 2018, but Plaintiff did not have sufficient funds in her bank account to make the payment when it was due.

57. As a result of not making the December payment, Oracle called Plaintiff on approximately December 17, 2018, told her that her explanation was insufficient and that her file could not be held.

58. Then, just a couple days later, Plaintiff received another call from Oracle stating that charges were going to be filed against her and her bank accounts would be frozen.

59. The communications from Oracle to Plaintiff as described in the above paragraphs were intended to cause Plaintiff to believe that a lawsuit had been filed or imminently would be filed against her.

60. The purpose of the communications from Oracle to Plaintiff as described in the above paragraphs was to coerce payment from Plaintiff.

61. The statements made by Oracle in the communications from Oracle to Plaintiff described in the above paragraphs were false, deceptive and misleading as there was no lawsuit, there was no process server looking for her, there was nothing for Plaintiff to have signed, there were no charges to be filed against Plaintiff and there was no authority for defendants to freeze Plaintiff's bank accounts.

62. The statements described in all of the communications to Plaintiff caused Plaintiff to suffer extreme anxiety and fear.

63. All of the defendants intended for Plaintiff to suffer extreme anxiety and fear as a result of all of the communications directed to her.

64. The purpose for which the defendants intended to cause Plaintiff's extreme anxiety and fear was to coerce a payment from Plaintiff on the Account.

65. Additionally, in one or more of the communications described above, Oracle failed to provide meaningful disclosure of its identity.

66. Also, in every communication with Plaintiff, Oracle failed to inform Plaintiff that Oracle was a debt collector, failed to inform Plaintiff that the communication was an attempt to collect a debt and that any information obtained would be used for the purpose of debt collection as required by 15 U.S.C. § 1692e(11).

67. Also, Oracle never provided Plaintiff the disclosures required by 15 U.S.C. § 1692g.

68. The telephone calls each constituted a "communication" as defined by 15 U.S.C. § 1692a(2).

69. The only reason that Oracle and/or representative(s), employee(s) and/or agent(s) of Oracle made telephone call(s) to Plaintiff was to attempt to collect the Account.

70. The statements and actions of Oracle and its representative(s), employee(s) and/or agent(s) constitute illegal communication in connection with debt collection and violate 15 U.S.C. § 1692d(6) and 15 U.S.C. § 1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)&(11) and 15 U.S.C. § 1692g.

71. All of the conduct by Oracle and/or its employees and/or agents alleged in the preceding paragraphs was done knowingly and willfully.

72. As a consequence of Oracle's collection activities and communication(s), Plaintiff seeks damages pursuant to 15 U.S.C. § 1692k(a).

73. DMP, directly or indirectly, exerted influence over Oracle and caused Oracle to act in the manner that it did with respect to Plaintiff.

74. DMP knew that Oracle repeatedly or continuously engaged in collection practices as described above.

75. During all times pertinent hereto, Valentine (a) created the collection policies and procedures used by DMP and/or Oracle, and their respective employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of DMP and/or Oracle, (c) oversaw the application of the collection policies and procedures used by DMP and/or Oracle and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by DMP and/or Oracle and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by DMP and/or Oracle and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by DMP and/or Oracle and their employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

76. During all times pertinent hereto, Cipressi (a) created the collection policies and procedures used by Oracle, and its respective employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Oracle, (c) oversaw the application of the collection policies and procedures used by Oracle and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by Oracle and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by Oracle and its

employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by Oracle and its employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

77. Cipressi knew that Oracle repeatedly or continuously engaged in collection practices as described above.

78. Valentine knew that Oracle and/or DMP repeatedly or continuously engaged in collection practices as described above.

79. Cipressi acted at all times mentioned herein personally and through the employee(s) of Oracle.

80. Valentine acted at all times mentioned herein personally and through the employee(s) of DMP.

81. Oracle, DMP,Valentine and Cipressi and their respective agents and employees knew that the information provided to Plaintiff was false.

82. Oracle, DMP, Valentine and Cipressi and their respective agents and employees told Plaintiff the above false information in order to trick, deceive and manipulate Plaintiff into transmitting money to Oracle (and indirectly to DMP, Valentine and Cipressi as well).

83. The use of telephones by Oracle, DMP, Valentine and Cipressi and their respective agents and employees to transmit the false information and to carry out their scheme to defraud Plaintiff into paying them money as described above via wires constitutes wire fraud in violation of 18 U.S.C. § 1343.

84. The use of banking and/or various money transfer networks via electronic means by Oracle, DMP, Valentine and Cipressi and their respective agents and employees to receive the money from Plaintiff after conveying to Plaintiff the false information described above constitutes wire fraud in violation of 18 U.S.C. § 1343.

### RESPONDEAT SUPERIOR

85. The representative(s) and/or collector(s) at Oracle were employee(s) and/or agents of Oracle at all times mentioned herein.

86. The representative(s) and/or collector(s) at Oracle were acting within the course and/or scope of their employment at all times mentioned herein.

87. The representative(s) and/or collector(s) at Oracle were under the direct supervision and control of Oracle at all times mentioned herein.

88. The actions of the representative(s) and/or collector(s) at Oracle are imputed to their employer, Oracle.

89. Oracle acted at all times as an agent of DMP and Valentine and Cipressi.

90. The actions of Oracle are imputed to DMP and Valentine and Cipressi.

91. DMP and/or Valentine were aware of the collection methods and practices used by Oracle and Cipressi.

### COUNT I:  VIOLATIONS OF RICO ACT, 18 U.S.C. § 1961, et seq.

92. The previous paragraphs are incorporated into this Count as if set forth in full.

93. As described above, Defendants Cipressi and Valentine were persons employed or associated with Defendants Oracle and/or DMP, each a "person" and an enterprise unto itself.

94. The workings together of defendants Cipressi, Valentine, Oracle, and DMP formed the enterprise required by 18 U.S.C. § 1961(4).

95. The activities described in paragraphs 53-84 above affected interstate commerce because the activities caused or attempted to cause money to move from the possession of one or more persons across state lines to Oracle and its owners/members.

96. As described above, Cipressi and Valentine, together with Oracle, and DMP, participated in the conduct of the enterprise's affairs.

97. Oracle, DMP, Cipressi and Valentine, on multiple times as described above, conveyed false information to Plaintiff via telephone wires across state lines over a long period of time in order to defraud Plaintiff into paying money to Oracle, and thus established a pattern of racketeering activity.

98. Plaintiff's account of the collection practices employed by Oracle and DMP and Cipressi and Valentine described above is but one account of the thousands of similar frauds committed by Oracle and DMP and Cipressi and Valentine in fraudulently obtaining money from residents of Texas and many other states over a period of years.

99. As a result of the racketeering activity, and only as a result of the racketeering activity, Plaintiff paid money to Oracle, constituting injury to Plaintiff's property.

100. As such, the conduct of Oracle, DMP, Cipressi and Valentine establish violations of 18 U.S.C. § 1962(c).

101. Pursuant to 18 U.S.C. § 1964(a), Plaintiff seeks an appropriate order or orders to prevent and restrain violations of section 18 U.S.C. § 1962 as described in 18 U.S.C. § 1964(a).

102. Pursuant to 18 U.S.C. § 1964(c), Plaintiff seeks actual and triple damages as well as reasonable attorneys fees and costs.

## **COUNT II:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq.**

103. The previous paragraphs are incorporated into this Count as if set forth in full.

104. The failure of Oracle to provide meaningful identity of itself in one or more of its communications with Plaintiff as described above constituted a violation of 15 U.S.C. § 1692d(6)

105. Oracle violated 15 U.S.C. § 1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)&(11) by:

   a. Telling Plaintiff that a process server was on the way to find her and asking Plaintiff if she had signed anything when there was no process server on the way and there was nothing for her to have signed for;

   b. Telling Plaintiff that she could repay the Account to stop the legal action that was being initiated when there was no legal action being initiated;

   c. Telling Plaintiff that her file could not be held;

   d. Telling Plaintiff that charges were going to be filed against her and that her bank accounts were going to be frozen.

106. These communications caused Plaintiff to believe that legal action against her had been initiated or soon would be, despite the fact that none of the defendants had initiated, nor had the present intent of initiating, legal action against her if she did not pay the account, in violation of 15 U.S.C. § 1692e(2).

107. These communications caused plaintiff to believe that Oracle was, or represented, an attorney who had or soon would bring a case against her, in violation of 15 U.S.C. § 1692e(3).

108.    These communications caused Plaintiff to believe that seizure, garnishment, attachment, or sale of any property or wages would result from Oracle's actions despite the fact that Oracle had no authority or intent to do any of these things, in violation of 15 U.S.C. § 1692e(4).

109.    These communications caused Plaintiff to believe that Oracle was going to do things in pursuit of collecting the Account that Oracle did not have the authority or intent to do, in violation of 15 U.S.C. § 1692e(5).

110.    These communications caused Plaintiff to believe that she had committed a crime and made her feel disgraced and embarrassed and ashamed, in violation of 15 U.S.C. § 1692e(7).

111.    These communications communicated information regarding Plaintiff's account that was known by Oracle to be false, in violation of 15 U.S.C. § 1692e(8).

112.    These communications used false representations or deceptive means, in violation of 15 U.S.C. § 1692e(10).

113.    In one or more communication with Plaintiff, Oracle failed to inform Plaintiff that it was a debt collector or that it was attempting to collect a debt or that any information obtained would be used for the purpose of debt collection, in violation of 15 U.S.C. § 1692e(11).

114.    Oracle's failure to provide notice of one or more of the statements required by 15 U.S.C. § 1692g was a violation of 15 U.S.C. § 1692g.

115.    Cipressi is liable to Plaintiff for the acts of Oracle in violation of the statutes described above because he influenced and/or established the policies and procedures

of Oracle and instructed Oracle's employees to act in the manner they did when communicating with Plaintiff.

116.    DMP is liable to Plaintiff for the acts of Oracle in violation of the statutes described above because it influenced and/or established the policies and procedures of Oracle and instructed Oracle's employees to act in the manner they did when communicating with Plaintiff,

117.    Valentine is liable to Plaintiff for the acts of Oracle in violation of the statutes described above because he influenced and/or established the policies and procedures of Oracle and instructed Oracle's employees to act in the manner they did when communicating with Plaintiff.

118.    Plaintiff suffered actual damages in the form of economic damages of at least $551.08 as a proximate result of the actions or inactions of Oracle, DMP, Valentine and Cipressi.

119.    Plaintiff suffered actual damages in the form of emotional distress as a proximate result of the actions or inactions of Oracle, DMP, Valentine and Cipressi.

120.    Pursuant to 15 U.S.C. § 1692k Plaintiff seeks damages, reasonable attorney's fees and costs from Oracle, DMP, Cipressi and Valentine.

## COUNT III:  VIOLATIONS OF THE TEXAS FINANCE CODE § 392.001, et seq.

121.    The previous paragraphs are incorporated into this Count as if set forth in full.

122.    Oracle violated Tex. Fin. Code § 392.301(a)(5)&(6)&(7) by telling Plaintiff that her file could not be held and that charges were going to be filed against her and that her bank accounts were going to be frozen.

17

123.    These statements caused Plaintiff to believe that charges were being filed against her when, in fact, charges were not being filed against her in violation of Tex. Fin. Code § 392.301(a)(6).

124.    These statements caused Plaintiff to believe that she would be arrested after charges were filed against her, when, in fact, she would not be arrested, in violation Tex. Fin. Code § 392.301(a)(5).

125.    These statements caused Plaintiff to believe that the funds in her bank account would be seized, when, in fact, the funds could not be seized because Oracle and/or DMP had not conducted the proper court proceedings to seize her bank account funds, in violation Tex. Fin. Code § 392.301(a)(7).

126.    Oracle violated Tex. Fin. Code § 392.304(a)(4) when it communicated with Plaintiff and did not inform her that the creditor on the account was Debt Management Partners.

127.    Oracle violated Tex. Fin. Code § 392.304(a)(5) when it communicated with Plaintiff and did not tell Plaintiff in the first communication that that the communication was an attempt to collect a debt and that any information obtained would be used for that purpose.

128.    By implying or stating that Plaintiff would be sued and/or that her bank account would be seized and/or that a process server was coming to serve her and/or that charges would be filed against her, despite the fact that the debt was merely past-due, suit had not been filed, and charges could not be brought against Plaintiff, Oracle misrepresented the character and/or nature of the debt and violated Tex. Fin. Code § 392.304(a)(8) in doing so.

129.   By implying or stating that Plaintiff would be sued and/or that her bank account would be seized and/or that a process server was coming to serve her and/or that charges would be filed against her, despite the fact that Oracle was not a law firm and does not sue consumers for past-due accounts and is not a law enforcement agency or a prosecuting attorney, Oracle misrepresented the nature of its services and violated Tex. Fin. Code § 392.304(a)(14) in doing so.

130.   By implying or stating that Plaintiff would be sued and/or that a process server was coming to serve her, despite the fact that Oracle was not a law firm and does not employ any lawyers for the purpose of litigating claims against consumers and, Oracle misrepresented that the communication was from an attorney or law firm and violated Tex. Fin. Code § 392.304(a)(16) in doing so.

131.   By implying or stating that Plaintiff would be sued and/or that a process server was coming to serve her, despite the fact that Oracle was not a law firm and does not employ any lawyers for the purpose of litigating claims against consumers and, Oracle misrepresented that the debt was being collected by a law firm and violated Tex. Fin. Code § 392.304(a)(17) in doing so.

132.   All of the statements from Oracle described above were false and deceptive and, thus, violated Tex. Fin. Code § 392.304(a)(19).

133.   DMP knew that Oracle and/or its employees and agents conducted their collection efforts in the ways described above but hired them anyway in violation of Tex. Fin. Code § 392.306.

134.   Valentine knew that Oracle and/or its employees and agents conducted their collection efforts in the ways described above but hired them anyway in violation of Tex. Fin. Code § 392.306.

135.   Plaintiff suffered actual damages in the form of economic damages of at least $551.08 as a proximate result of the actions or inactions of Oracle, DMP, Valentine and Cipressi.

136.   Plaintiff suffered actual damages in the form of emotional distress as a proximate result of the actions or inactions of Oracle, DMP, Valentine and Cipressi.

137.   Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Oracle, DMP, Cipressi and Valentine.

### COUNT IV:  IMPUTED LIABILITY OF HARTFORD FOR VIOLATIONS OF TEXAS FINANCE CODE § 392.001, et seq.

138.   The previous paragraphs are incorporated into this Count as if set forth in full.

139.   Hartford is liable to Plaintiff for the damages, reasonable attorneys fees, and costs incurred by Plaintiff in pursuing her claims against Oracle and DMP, up to $10,000 (the amount of the bond) against each company, pursuant to Tex. Fin. Code § 392.102.

### COUNT V:  INVASION OF PRIVACY (INTRUSION ON SECLUSION)

140.   The previous paragraphs are incorporated into this Count as if set forth in full.

141.   Oracle engaged in extreme and outrageous conduct by falsely threatening that criminal charges would be filed against Plaintiff if the Account was not immediately repaid, falsely threatening that Plaintiff's bank account would be seized if the Account was not immediately repaid, and falsely stating that Plaintiff had been sued

and that a process server was actively looking for Plaintiff and would server her with papers if the Account was not immediately repaid.

142.    DMP, Cipressi and Valentine conspired with Oracle to invade Plaintiff's privacy as described above.

143.    The conduct of Oracle, DMP, Cipressi and Valentine as described above was intentional and it intruded on Plaintiff's solitude, seclusion, or private affiars in such a way that would be highly offensive to a reasonable person.

144.    Plaintiff suffered serious emotional distress as a result of Oracle's conduct in that she suffered severe emotional distress, anxiety and fear.

145.    Plaintiff suffered economic damages in the amount of $551.08 as a result of the conduct of Oracle, DMP, Cipressi and Valentine.

## COUNT VI:  EXEMPLARY DAMAGES

146.    The previous paragraphs are incorporated into this Count as if set forth in full.

147.    Exemplary damages should be awarded against Oracle, DMP, Valentine and/or Cipressi because the harm with respect to which Plaintiff seeks recovery of exemplary damages resulted from malice (which means that there was a specific intent by Oracle, DMP, Valentine and Cipressi to cause substantial injury or harm to Plaintiff) and/or gross negligence (which means that the actions and/or omissions of Oracle, DMP, Valentine and Cipressi (i) when viewed objectively from the standpoint of Oracle, DMP, Valentine and Cipressi at the time of the acts and/or omissions, those acts and/or omissions involved an extreme degree of risk, considering the probability and magnitude of potential harm to others and (ii) were such that Oracle, DMP, Valentine and Cipressi had an actual, subjective awareness of the risk involved

but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others).

## **JURY TRIAL DEMAND**

148.    Plaintiff is entitled to and hereby demands a trial by jury.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court grant the following:

149.    Judgment in favor of Plaintiff and against Oracle Financial Group, LLC as follows:

a.  Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

b.  Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

c.  Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

d.  Treble actual damages pursuant to 18 U.S.C. § 1964(c);

e.  Reasonable attorneys fees and costs pursuant to 18 U.S.C. § 1964(c);

f.  An appropriate order or orders to prevent and restrain violations of section 18 U.S.C. § 1962 as described in 18 U.S.C. § 1964(a);

g.  Permanently enjoin Oracle following trial of this cause from committing acts in violation of the statute(s) cited herein pursuant to Tex. Fin. Code § 392.403(a);

h.  Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

i.  Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

j.  Such other and further relief as the Court deems just and proper.

150. Judgment in favor of Plaintiff and against Debt Management Partners, LLC as follows:

    a. Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

    b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

    c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d. Treble actual damages pursuant to 18 U.S.C. § 1964(c);

    e. Reasonable attorneys fees and costs pursuant to 18 U.S.C. § 1964(c);

    f. An appropriate order or orders to prevent and restrain violations of section 18 U.S.C. § 1962 as described in 18 U.S.C. § 1964(a);

    g. Permanently enjoin DMP following trial of this cause from committing acts in violation of the statute(s) cited herein pursuant to Tex. Fin. Code § 392.403(a);

    h. Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

    i. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

    j. Such other and further relief as the Court deems just and proper.

151. Judgment in favor of Plaintiff and against Hartford Casualty Insurance Company as follows:

    a. Pursuant to Tex. Fin. Code § 392.102, the total amount of damages and reasonable attorney's fees and costs awarded to Plaintiff against Oracle under Tex. Fin. Code § 392.403, up to a total of $10,000; and

    b. Pursuant to Tex. Fin. Code § 392.102, the total amount of damages and reasonable attorney's fees and costs awarded to Plaintiff against DMP under Tex. Fin. Code § 392.403, up to a total of $10,000; and

    c. Such other and further relief as the Court deems just and proper.

152.    Judgment in favor of Plaintiff and against Daniel J. Valentine as follows:

    a.  Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

    b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

    c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d. Treble actual damages pursuant to 18 U.S.C. § 1964(c);

    e. Reasonable attorneys fees and costs pursuant to 18 U.S.C. § 1964(c);

    f. An appropriate order or orders to prevent and restrain violations of section 18 U.S.C. § 1962 as described in 18 U.S.C. § 1964(a);

    g. Permanently enjoin Valentine following trial of this cause from committing acts in violation of the statute(s) cited herein pursuant to Tex. Fin. Code § 392.403(a);

    h. Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

    i. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

    j. Such other and further relief as the Court deems just and proper.

153.    Judgment in favor of Plaintiff and against Gregory Cipressi as follows:

    a. Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

b.  Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

c.  Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

d.  Treble actual damages pursuant to 18 U.S.C. § 1964(c);

e.  Reasonable attorneys fees and costs pursuant to 18 U.S.C. § 1964(c);

f.  An appropriate order or orders to prevent and restrain violations of section 18 U.S.C. § 1962 as described in 18 U.S.C. § 1964(a);

g.  Permanently enjoin Cipressi following trial of this cause from committing acts in violation of the statute(s) cited herein pursuant to Tex. Fin. Code § 392.403(a);

h.  Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

i.  Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

j.  Such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE WOOD FIRM, PLLC

/s/ Jeffrey D. Wood
Jeffrey D. Wood, Esq.
ArkBN: 2006164
11610 Pleasant Ridge Rd.
Suite 103, PMB 208
Little Rock, AR  72223
TEL:  682-651-7599
FAX:  888-598-9022
EMAIL:  jeff@jeffwoodlaw.com
Attorney for Plaintiff